1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    EMIL S. FABIAN,                        Case No.  24-cv-01589-JD

8                  Plaintiff,

9         v.                                **ORDER RE SUMMARY JUDGMENT**

10   MARTIN O'MALLEY,

11                Defendant.

United States District Court
Northern District of California

12        Plaintiff Emil Fabian challenges a denial of benefits decision by a Social Security

13   Administration (SSA) administrative law judge (ALJ) under Title II of the Social Security Act.

14   Dkt. No. 1.  Each side filed motions for summary judgment.  Dkt. Nos. 10-1, 12.  The denial of

15   benefits is affirmed.

16                                **BACKGROUND**

17        The SSA denied Fabian's Title II application for disability insurance benefits in August

18   2022, and again upon reconsideration in November 2022.  Administrative Record, Dkt. No. 7

19   (AR), at 81-82, 106-07.  In August 2023, an ALJ held a telephonic hearing at which Fabian was

20   represented by an attorney.  AR 32-33.  The ALJ heard testimony from Fabian and a vocational

21   witness, Stacey Lambert.  *Id.*

22        In December 2023, the ALJ issued an 11-page decision that affirmed the denial of

23   disability benefits.  AR 17-27.  The ALJ carefully reviewed Fabian's medical records, and found

24   evidence of "degenerative disc disease, the residual effects of a right shoulder tear, the residual

25   effects of a left wrist fracture, vertigo, and migraine headaches."  AR 20.  The records included a

26   report by Dr. Niloofar Fadaki, a consultative examining physician.  AR 25.  Dr. Fadaki said that

27   Fabian could not lift objects above shoulder level, but stated that Fabian had "[r]efused," or

28   otherwise "[d]id not make any effort," to perform exercises relevant to determining range of

motion in his shoulders.  AR 858, 862.  The ALJ concluded that Fabian's capacity for shoulder lifting could not be assessed properly because he had "refused to even attempt lifting above shoulder height, and refused to demonstrate range of motion in his shoulders."  AR 25. Consequently, the ALJ declined to incorporate an over-the-shoulder limitation in the residual functional capacity (RFC) determination, and did not ask the vocational witness whether that limitation would affect Fabian's ability to perform his past relevant work as a radiologic technologist.  *See* AR 22, 49-65.

The ALJ determined that Fabian had "no more than mild limitations due to mental symptoms."  AR 25.  This was based on a report by Dr. Silvia Torrez, who performed a mental health evaluation of Fabian and noted only "mild" limitations in his ability to maintain adequate attention and concentration, to withstand the stress of a routine workday, and to interact appropriately with co-workers, supervisors, and the public on a regular basis.  AR 829-30.

The ALJ heard Fabian's testimony about his back pain, headaches, shoulder pain, and other physical impairments, but found that his "statements concerning the intensity, persistence and limiting effects" of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  AR 24.  For example, Fabian said he could not lift more than five pounds, but had previously admitted to lifting twenty pounds at work.  AR 23, 41-42. Although Fabian complained of back and shoulder pain, he was able to work and take college classes, could easily maneuver on and off an examination table without assistance, and had elected to work in lieu of undergoing shoulder surgery.  AR 23-24, 39-44, 857.  The ALJ noted multiple reports by physicians saying that Fabian had refused to participate in examinations of his strength and range of motion.  AR 23-25, 858-61.  During one examination, Fabian refused to demonstrate cervical range of motion, but was seen "easily" bending his neck and rotating his head.  AR 859. He was also seen walking "without any sign of imbalance or mobility issues" despite having complained of significant back pain.  AR 857.

The ALJ determined that Fabian has the RFC to perform "light work" with the following limitations:

> [C]laimant cannot climb ladders, ropes, or scaffolds, can perform

postural tasks occasionally, can occasionally reach overhead, can frequently reach with the right upper extremity in other directions, and must avoid even moderate exposure to workplace hazards.

AR 22.  The ALJ concluded that Fabian could return to his prior job as a radiologic technologist, and so was not "disabled" under Sections 216(i) and 223(d) of the Social Security Act.  AR 26-27; *see also* 42 U.S.C. §§ 416(i), 423(d).

## DISCUSSION

Fabian's main objection to the ALJ decision is that the RFC determination did not properly account for the vocational evidence presented at the hearing.  Dkt. No. 10-1 at 11-14.  The vocational witness testified that Fabian could handle the job of a radiologic technologist, which includes overhead reaching, in a manner consistent with his RFC.  *See* AR 51-54.  Fabian says this opinion conflicted with information in the Dictionary of Occupational Titles (DOT) to the effect that overhead reaching is a "frequent" requirement of radiologic tech work, and not an "occasional" requirement as the ALJ concluded.  Dkt. No. 10-1 at 12-14.  Fabian also says that the ALJ did not ask the vocational witness about limitations due to reaching capacity, mental issues, or migraines, and improperly slighted Fabian's testimony about his health and work abilities.  *Id.* at 15-20.

"Judicial review will disturb an ALJ's decision to deny benefits only 'if it is not supported by substantial evidence or it is based on legal error' that is not harmless."  *Tibbetts v. Kijakazi*, No. 3:22-cv-00898-JD, 2022 WL 16716153, at *1 (N.D. Cal. Nov. 4, 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

To start with Fabian's main contention, the ALJ did not err with respect to the DOT. When determining whether a claimant has the capacity to perform past relevant work, an ALJ may not rely on a vocational witness's testimony "without first inquiring whether that expert's testimony conflicts with the [DOT]."  *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194-95 (9th Cir. 2022) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1150 (9th Cir. 2007)); *see also* Social Security Ruling, SSR 00-4p.  If the vocational witness testifies that there is no conflict, the ALJ is not obligated to inquire any further unless a conflict is "obvious or apparent" based on the particular facts of the case.  *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting *Gutierrez v.*

1   *Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)).  If a conflict is identified, "the ALJ must 'determine

2   whether the vocational expert's explanation for the conflict is reasonable and whether a basis

3   exists for relying on the expert rather than the [DOT].'"  *Buck v. Berryhill*, 869 F.3d 1040, 1051-

4   52 (9th Cir. 2017) (quoting *Massachi*, 486 F.3d at 1153).

5          Here, the ALJ asked the vocational witness whether her testimony was consistent with the

6   DOT, and the vocational witness said it was.  AR 54.  Fabian says the ALJ was required to inquire

7   further into overhead reaching, Dkt. No. 10-1 at 12-14, but did not demonstrate why that might

8   have been so.  The Ninth Circuit has stated that, while "reaching" under the DOT "connotes the

9   ability to extend one's hands and arms 'in any direction,' not every job that involves reaching

10  requires the ability to reach overhead."  *Gutierrez*, 844 F.3d at 808 (internal citation omitted).

11  Consequently, to assess whether there was an obvious or apparent conflict, the Court must look to

12  the "essential, integral, or expected" duties of a radiologic technologist, and determine whether it

13  is "likely and foreseeable" that Fabian must do more than occasional overhead reaching to perform

14  those duties "in an acceptable and efficient manner."  *Lamear*, 865 F.3d at 1205-06 (quoting

15  *Gutierrez*, 844 F.3d at 808).

16         Fabian did not identify any relevant tasks that might require overhead reaching, and did not

17  cite any evidence in the record to that effect.  *See* Dkt. No. 10-1 at 12-14.  In a reply brief, he

18  mentioned that radiologic technologists may have to "[reach] up to 6 [feet] with the use of a step

19  stool if needed to manipulate equipment."  Dkt. No. 15 at 3-4.  The SSA notes that a radiologic

20  technologist's duties include operating radiologic equipment to produce x-rays, positioning

21  patients on exam tables, and adjusting devices to obtain optimum views.  Dkt. No. 12 at 3.  But

22  there is no indication that these tasks require frequent overhead reaching.  The ALJ was not

23  obligated to inquire further.  *See Gutierrez*, 844 F.3d at 808-09.

24         Fabian says the ALJ erred by failing to ask the vocational witness about limited overhead

25  reaching and attendant evidence from Dr. Fadaki.  Dkt. No. 10-1 at 15-16.  An ALJ may reject an

26  examining or treating doctor's opinion as inconsistent or unsupported if they provide an

27  explanation supported by substantial evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th

28  Cir. 2022).  "'Consistency means the extent to which a medical opinion is consistent with the

4

United States District Court
Northern District of California

1    evidence from other medical sources and nonmedical sources in the claim,'" whereas

2    "[s]upportability focuses on whether 'a medical source supports a medical opinion by explaining

3    the relevant objective medical evidence.'" *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir.

4    2024) (quoting *Woods*, 32 F.4th at 791-92).  In evaluating medical testimony, "[t]he agency must

5    'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other

6    source, and 'explain how [it] considered the supportability and consistency factors' in reaching

7    these findings." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)).

8        The ALJ's rejection of the over-the-shoulder limitation was adequately explained and

9    supported by substantial evidence.  Although Dr. Fadaki said that Fabian had a limited ability to

10   reach over his shoulders, she did not provide an explanation for that conclusion.  *See* AR 862.

11   "The ALJ need not accept the opinion of any physician, including a treating physician, if that

12   opinion is brief, conclusory, and inadequately supported by clinical findings." *Stiffler*, 102 F.4th

13   at 1107 (quoting *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).  Dr. Fadaki also reported that

14   Fabian did not permit a range of motion exam of his shoulders.  *See* AR 858, 862.  The ALJ

15   treated this as a refusal, rather than an inability, to go through with the exam.  *See* AR 25.  This

16   conclusion was supported by the multiple comments in the record reporting Fabian's refusal to

17   undergo medical examinations.  *See* AR 23-25, 858-61.  As Dr. Fadaki noted, Fabian was

18   generally "uncooperative and confrontational when he understood [her] suspicions about

19   inconsistencies in his history and medical examination findings." AR 861.  Fabian refused to

20   move both arms despite originally complaining about right shoulder pain only.  *Id.*

21       Consequently, the ALJ properly declined to credit Dr. Fadaki's conclusion.  Since the ALJ

22   did not err in discounting evidence of an over-the-shoulder limitation, any failure to raise that

23   limitation with the vocational witness was not error either.  *See Stubbs-Danielson v. Astrue*, 539

24   F.3d 1169, 1175-76 (9th Cir. 2008).

25       Fabian's suggestion that the ALJ improperly failed to raise his mental impairments with

26   the vocational witness is equally unavailing.  *See* Dkt. No. 10-1 at 16.  The only evidence of

27   mental health concerns came from Dr. Torrez, and that described only mild issues.  AR 829-30.

28   The ALJ accepted Dr. Torrez's conclusion that "the claimant had no more than mild limitations

1   due to mental symptoms," and found her opinion "persuasive" and "consistent with the opinions

2   of agency consultants who considered the record." AR 25.  Rather than "discounting" Dr.

3   Torrez's findings, Dkt. No. 10-1 at 16, the ALJ determined that they were consistent with Fabian's

4   capacity to perform "light work" with the identified limitations.  AR 22, 25-26.

5        So too for Fabian's migraines.  *See* Dkt. No. 10-1 at 17.  The ALJ considered evidence of

6   Fabian's migraine condition, but weighed that evidence against the fact that Fabian was treated

7   with medication, and that imaging of his brain was "unremarkable."  AR 24.  The ALJ

8   consequently determined that Fabian's condition was consistent with the RFC finding.  *See id.*

9        Fabian points to a report by Dr. Raymond Swanson, who noted after an evaluation that

10  Fabian's headaches were "relatively well controlled" with an average of three headache days per

11  month.  AR 352.  In addition to being a benign finding, this report was from August 2021, nearly a

12  year before the alleged onset of disability.  *Id.*  In subsequent evaluations, Fabian reported no

13  headaches.  *See, e.g.,* AR 328, 336.

14       Overall, the ALJ properly weighed the evidence of Fabian's migraine condition in arriving

15  at the RFC determination.  The ALJ did not need to question the vocational witness any further on

16  the matter.

17       As a closing point, Fabian says the ALJ unduly discounted his testimony.  Dkt. No. 10-1

18  at 17-19.  When, as here, an ALJ finds "objective medical evidence of an underlying impairment

19  which could reasonably be expected to produce the pain or other symptoms alleged," but was

20  presented with "no evidence of malingering," the ALJ may "reject the claimant's testimony about

21  the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

22  *Howard v. Saul*, No. 3:18-cv-02570-JD, 2019 WL 6311411, at *3 (N.D. Cal. Nov. 25, 2019)

23  (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "Although an ALJ may use

24  'inconsistent objective medical evidence in the record to discount subjective symptom testimony,'

25  the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by

26  demanding positive objective medical evidence fully corroborating every allegation within the

27  subjective testimony.'"  *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting

28  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)) (emphasis removed).

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Much of Fabian's testimony was undermined by contradictory evidence. *See* AR 23-24. For example, Fabian's complaints about shoulder and back pain were undercut by evidence of his ability to maneuver around an examination room with no difficulty, his participation in various life activities including school and work, and his refusal to undergo shoulder surgery. *See* AR 23-24, 39-40, 44, 857. Fabian's lifting testimony was contradicted by his own testimony that he could lift twenty pounds at work. AR 23, 41-42. As discussed, the record indicates that Fabian repeatedly refused to permit examinations to evaluate possible limitations. AR 23-25, 858-61. The ALJ raised this and other evidence in determining that Fabian's testimony was "not entirely consistent with the medical evidence and other evidence in the record." AR 24. Consequently, the ALJ provided "clear and convincing" reasons for failing to incorporate the full extent of Fabian's symptoms testimony. *Howard*, 2019 WL 6311411, at *3.

Fabian does not raise any other challenges to the ALJ's decision. Because the ALJ properly determined that Fabian has the residual functional capacity to perform his past relevant work as a radiologic technologist, Fabian is not "disabled" under Sections 216(i) and 223(d) of the Social Security Act. *See Tibbetts*, 2022 WL 16716153, at *1 ("[A] claimant is not disabled if her residual functional capacity allows her to perform past relevant work.") (quoting *Woods*, 32 F.4th at 787 n.1). Consequently, summary judgment is granted for defendant. Each side will bear its own costs and attorney's fees. A separate judgment will be entered.

**IT IS SO ORDERED.**

Dated: March 31, 2025

_____
JAMES DONATO
United States District Judge